Michael **FACCHIANO,** Jr., John Facchiano, and Facchiano Construction Company, Inc., Appellants,

v.

The **UNITED STATES DEPARTMENT OF LABOR,** The Secretary of Labor, William E. Brock, in his official capacity and James L. Valin, in his official capacity, Appellees.

No. 88–3143.

United States Court of Appeals, Third Circuit.

Argued July 19, 1988.

Decided Oct. 21, 1988.

Rehearing and Rehearing In Banc Denied Nov. 22, 1988.

Frederick J. Francis (argued), Thomas A. Berret, Meyer, Unkovic & Scott, Pittsburgh, Pa., for appellants.

J. Alan Johnson, U.S. Atty., Bonnie R. Schlueter (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellees.

Before HIGGINBOTHAM, BECKER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Following an administrative proceeding, appellants, Facchiano Construction Company, Inc. ("Facchiano Construction") and one of its principals, Michael Facchiano, Jr., were debarred in 1986 by the Department of Housing and Urban Development ("HUD"), from participating for a period of 18 months in HUD–sponsored contracts. This debarment was based upon the conviction of Michael Facchiano and Facchiano Construction on mail fraud charges which arose out of the determination of the Department of Labor ("DOL") that they had falsified records to conceal violations of the Davis–Bacon Act, 40 U.S.C. § 276a et seq. (1982), and the Contract Work Hours and Safety Standards Act, 40 U.S.C. §§ 327–333

(1982) in connection with work on HUD-sponsored contracts.

DOL thereupon sought to debar appellants, Facchiano Construction, and its officers, Michael Facchiano, Jr., and John Facchiano,[1] from *all* government contracts for a period of three years on the grounds of the underlying Davis–Bacon violations. Appellants responded with a suit in the district court for the Western District of Pennsylvania seeking to enjoin the administrative proceeding on the grounds that it was precluded by the previous debarment. The district court granted summary judgment for DOL. This appeal presents the question whether a suit for injunctive relief will lie in the district court under these circumstances, or whether appellants must instead, pursuant to the exhaustion of administrative remedies doctrine, present the preclusion defense in the administrative proceedings.

Although a court can enjoin administrative proceedings when an agency undertakes vexatious litigation, the district court found that not to be the case here, and its finding is supported. However, the district court failed to consider the well-established principle that administrative tribunals are fully capable of considering preclusion defenses, and it contravened the related exhaustion doctrine by reaching the merits and determining that the HUD debarment in fact had no preclusive effect on the DOL debarment proceeding. Therefore, while we will affirm the grant of summary judgment against appellants insofar as it denied injunctive relief, we will vacate the opinion of the district court insofar as it adjudicates the merits of the preclusion issue. The agency will be able therefore to resume its proceedings and address the issue itself.

## I.

After Facchiano Construction had performed a number of construction projects sponsored by HUD's Community Development Block Grant program, DOL conducted an investigation which revealed that it had been falsely certifying the wages paid to the employees who were working on the HUD-sponsored projects. The investigation, completed in 1984, disclosed that the wages and overtime pay were below those required by the Davis–Bacon Act, 40 U.S.C. § 276a et seq. (1982), and the Contract Work Hours and Safety Standards Act, 40 U.S.C. §§ 327–332 (1982). Because of false wage certifications sent through the mails, Michael Facchiano, Jr. and Facchiano Construction were indicted for mail fraud. In February 1985, they waived indictment and pleaded guilty. The district court required them to make restitution of $126,000 to the employees and fined Michael Facchiano and the Facchiano Construction $2,000 each. Michael Facchiano also received a prison sentence of six months followed by five years probation.

In May 1985, following the mail fraud conviction, HUD initiated an administrative action to debar Michael Facchiano, Jr. and Facchiano Construction from HUD-sponsored contracts pursuant to 24 C.F.R. § 24.6(a)(1), (4), and (9) (1985). Under these regulations, HUD can debar contractors who have been convicted of crimes committed in the pursuit, the attempt to pursue, or the performance of public or private contracts, where the conviction(s) have put the contractors' integrity in doubt or where the conduct involved is deemed "serious" by the Assistant Secretary of HUD. On May 15, 1985, HUD notified Michael Facchiano and Facchiano Construction of its proposed debarment and requested submission of briefs and supporting material in accordance with 24 C.F.R. § 24.7(a) (1985).[2] In a final order dated March 5, 1986, the HUD administrative law judge ordered an 18–month debarment from contracts awarded by HUD. This order was not appealed.

---

**1.** DOL also sought to debar Michael Facchiano, Sr., who is not a party to this suit.

**2.** Although appellants requested an oral hearing, they were not entitled to a hearing under 24

C.F.R. § 24.5(c) (1985). App. at 33a. The HUD administrative law judge therefore based his determinations on the documentary evidence and written briefs submitted by the parties.

In December 1985, DOL notified appellants that it was initiating its own debarment proceeding under 29 C.F.R. § 5.12(b)(1) (1985). This regulation enables DOL to debar contractors for willfully violating the Davis–Bacon Act and other regulatory labor standards. DOL sought to debar appellants from all government contracts for three years. Rather than avail themselves of the opportunity to contest this second debarment in the administrative forum, appellants immediately sued in the District Court for the Western District of Pennsylvania, seeking a permanent injunction or a writ of mandamus to prevent DOL's administrative proceedings. The district court issued a preliminary injunction staying the administrative proceedings pending the outcome of the suit. Both parties moved for summary judgment, and the district judge assigned the case to a magistrate for a report and recommendation.

In their summary judgment memorandum, appellants contended that the DOL's proposed debarment was founded on the same cause of action as the HUD debarment, and hence was barred by principles of claim preclusion. Acknowledging that the HUD debarment was based upon a conviction, and the DOL proceeding upon the underlying facts the concealment of which led to the conviction, appellants submitted that the distinction was without a difference and that the claims were essentially the same. In appellants' view, DOL and HUD were privies, as agencies in the executive branch, and hence, DOL's claim should have been raised in the prior debarment proceeding since otherwise the same government could repeatedly punish a contractor for the same conduct.[3] DOL, however, rejoined that the HUD debarment had no claim preclusive effect on the DOL debarment proceeding precisely because the mail fraud conviction and the underlying regulatory violations represented different causes of action.

The magistrate began by noting that exhaustion is not required when, by not observing the principles of preclusion, "'the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights.'" App. at 147 (quoting *Susquehanna Valley Alliance v. Three Mile Island*, 619 F.2d 231, 245 (3d Cir.1980), *cert. denied*, 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981). He found, however, that this case did not fall within this exception to the exhaustion doctrine. Then addressing the preclusion issue, he determined that the HUD and the DOL debarments were different in two respects: (1) the HUD debarment was limited to HUD contracts whereas the DOL debarment would be government wide; and (2) the HUD debarment was based on appellants' criminal conviction whereas the DOL debarment would be based on the conduct underlying the mail fraud, *i.e.*, the violations of the Davis–Bacon Act. The magistrate believed that, because of these differences, the two separate agency actions arose from different causes of action and subsumed different issues, and that neither issue preclusion or claim preclusion should apply. The magistrate therefore recommended that injunctive relief be summarily denied on the grounds that no preclusive effect exists and that, as a consequence, appellants failed to meet the requirements for the exception to the exhaustion doctrine. Adopting the magistrate's recommendation and findings, the district court granted DOL's motion for summary judgment. This appeal followed.

## II.

The doctrine of exhaustion of remedies requires that parties first use all prescribed administrative measures for resolving a conflict before they seek judicial remedies. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–52, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). This doctrine serves judicial economy by preventing piecemeal judicial review of agency actions and facilitates judicial review by allowing the administrative tribunal to use its exper-

---

**3.** Although appellants also relied upon *issue* preclusion, that doctrine would not appear apposite. Moreover, it would appear to be of doubtful utility to appellants since all the issues in the HUD debarment were decided against appellants.

tise to develop a complete factual record. *See Cerro Metal Products v. Marshall,* 620 F.2d 964, 970 (3d Cir.1980). Further, the doctrine serves to prevent the courts from frustrating congressional decisions to have certain disputes resolved originally in administrative forums. *See Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128, 1136 n. 21 (3d Cir.1979).

■ The doctrine of claim preclusion is important in the administrative as well as the judicial context, because of the "obvious principle that a controversy should be resolved once, not more than once." K. Davis, 4 *Administrative Law Treatise* § 219 (2d Ed.1983). In general,

> [w]here an administrative forum has the essential procedural characteristics of a court ... its determinations should be accorded the same finality that is accorded the judgment of a court. The importance of bringing a legal controversy to conclusion is generally no less when the tribunal is an administrative tribunal than when it is a court. Hence, the rule of claim preclusion is properly applied to administrative adjudications of legal claims.

*Restatement (Second) of Judgment* § 83 comment b (1982). Thus, there are compelling reasons for allowing the doctrine of claim preclusion to operate in administrative determinations.

We note, however, that preclusion does not apply in all administrative law cases. In *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), the Supreme Court held that preclusion principles apply to administrative proceedings [only] when the administrative agency in the first action was "acting in a judicial capacity" and the parties had an adequate opportunity to present their case. *See also Bowen v. United States,* 570 F.2d 1311, 1320–21 (7th Cir.1978). Moreover, we have noted that administrative preclusion "must be tempered by fairness and equity" and is not as rigidly enforced as preclusion in judicial proceedings. *Purter v. Heckler,* 771 F.2d 682, 691 (3d Cir.1985). Nevertheless, "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." *Restatement (Second) of Judgments* § 83(1) (1982); *see also* K. Davis, *supra,* § 21:2 (detailing the development of administrative preclusion). Therefore, an administrative tribunal cannot refuse to observe these preclusion principles when they do apply.

■ In the case before us, the HUD debarment was sufficiently adjudicatory and final to enable appellants to raise a preclusion defense in the later DOL debarment. Appellants had ample notice, and they had an opportunity to present their case to the HUD ALJ in briefs and documentary evidence. Moreover, the HUD ALJ filed a detailed opinion containing his factual findings and rulings. *In re Michael Facchiano, Jr. and Facchiano Construction Co., Inc.,* HUDBCA No. 85–962–D33 (March 5, 1986) [available on WESTLAW, 1986 WL 19673]. Appellants do not argue that consideration of preclusion in the administrative tribunal would lead to inequities or unfairness, and we perceive none. We thus conclude that, unless the doctrine is somehow waived, the DOL ALJ must at least consider appellants' preclusion defense, and concomitantly that the doctrine of exhaustion prevents the district court from deciding the preclusion defense in the first instance.

### III.

■ As with many legal doctrines, the doctrine of exhaustion is not absolute. The doctrine exists within a court's discretion rather than as a strict rule of law. *See Cerro Metal Products,* 620 F.2d at 970 ("Except when required by statute, exhaustion of administrative remedies is not an inexorable command, but is a matter of sound judicial discretion"); K. Davis, *supra,* § 26:1, at 414–417. This court has developed three broad exceptions to the doctrine:

> We have declined to require exhaustion [1] when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights,

[2] when resort to administrative procedures is "clearly shown to be inadequate to prevent irreparable injury," or [3] when exhaustion is "futile."

*Susquehanna Valley Alliance v. Three Mile Island,* 619 F.2d 231, 245 (3d Cir. 1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981) (citations omitted).[4] We address the exceptions now, except that since there is no claim of futility, we need not address that exception.

■ The requirement of exhaustion may be waived under the first exception in *Susquehanna* when an agency's malicious prosecution and disregard for the principles of preclusion amount to a violation of a party's due process. Appellants claim that this case falls within the due process exception to the exhaustion doctrine. They contend that they should not be required to litigate the DOL debarment in an administrative forum because the HUD debarment proceeding so clearly precludes other debarments by executive agencies.

The applicable principle is summarized by Professor Moore:

[That a] claim asserted in a subsequent proceeding is barred by the res judicata effect of a prior judgment is not itself grounds for an injunction against the claimant. Vexatious, damaging or harassing potentialities of the proceeding to be enjoined must be established to authorize relief. Bad faith, if any, of the party seeking relitigation, difficulties imposed by a subsequent suit or suits on the party seeking an injunction, in the expense of time, money and energy required to defend, and the effect of continued litigation on his business or reputation, are considered by courts when asked to enjoin relitigation of matters previously adjudged.

J. Moore, J. Lucas & T. Currier, 1B *Moore's Federal Practice* ¶ 0.408[2] (1988) (footnotes omitted). In *Continental Can Co. v. Marshall,* 603 F.2d 590 (7th Cir.1979), for example, the Court of Appeals enjoined the Occupational Safety and Health Review Commission ("OSHRC") from citing the Continental Can Company for noise level violations. In 1973, an administrative law judge had vacated eight OSHRC citations against Continental Can because OSHRC's interpretation of the statutory noise reduction standards was invalid. Despite this ruling OSHRC proceeded to litigate citations issued to sixteen other Continental Can plants under the same (invalid) interpretation. Since all of Continental Can's eighty plants used the same machinery as the cited plants, the court found that Continental Can faced the possibility of relitigating "the issue 'over and over in an untold number of hearings.'" *Id.* at 596 (quoting the district court). The repetitious litigation in this case, therefore, amounted to "'harassment of a capricious kind'" and violated Continental Can's due process rights. *Id.* Since requiring Continental

---

**4.** The dissent argues that exhaustion may not be required when the "issue involved is a strictly legal one, involving neither the agency's particular expertise nor its fact finding processes." *Board of Education v. Harris,* 622 F.2d 599, 607 (2d Cir.1979), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981). The case law indicates that this Court recognizes a legal question exception to the exhaustion doctrine, however; this exception is inapposite to this case, because the issue to be decided is not "strictly legal" as that term has been applied in the exhaustion cases. Two cases in this Circuit elaborate on what is meant by the legal question exception to the exhaustion doctrine. In *Bethlehem Steel Corp. v. EPA,* 669 F.2d 903 (3d Cir. 1982), we stated that exhaustion might not be required "where a dispute centers on legal questions such as constitutional or statutory interpretation." *Bethlehem Steel,* 669 F.2d at 907. *See also Flying Tiger Line v. Teamsters Pension* *Trust Fund,* 830 F.2d 1241, 1253 (3d Cir.1987) (stating that "the requirements of the exhaustion doctrine are ... not applicable" when the issue is one of statutory interpretation). In contrast, in this case we have a mixed question of fact and law—whether the HUD cause of action and the DOL cause of action are sufficiently similar to justify claim preclusion.

Furthermore, the body most conversant with the matter of what constitutes a debarment cause of action for DOL is DOL. Therefore, we also decline to apply this exception to this case, because DOL is more expert on this issue. *See Bethlehem Steel,* 669 F.2d at 907 ("[I]t is more desirable to let the administrative process go forward without interruption than to permit the parties to petition the courts at various intermediate stages. In that way, the agency can ... apply any special expertise it might possess ....").

Can to face the administrative tribunal would only exacerbate this unconstitutional injury, the court deemed exhaustion waived.[5]

The circumstances in *Continental Can* are distinguishable from those before us for three reasons. First, Continental Can faced the possibility of relitigating the same issue an "untold" number of times because the OSHRC ALJ refused to apply preclusion to the relitigated issue. In the case at bar, there is no indication that either HUD or DOL (or any other government agency) would pursue any debarment actions other than those already taken. Moreover, DOL's ALJ in the case at bar did not have a chance to address appellants preclusion defense before they sought injunctive relief. Second, although we intimate no view on the underlying issue, it is undoubted that this case, on its face, does not present the elements of preclusion in an aggravated form as did *Continental Can.* This case involves two different agencies pursuing two debarments differing in length and scope under two different sets of regulations. *Continental Can,* on the other hand, involved the same agency trying repeatedly to relitigate what was undoubtedly the same issue against the same company. Third, unlike the Continental Can Company, appellants lost their earlier administrative proceedings; therefore, DOL was not harassing a previously vindicated party. *See International Harvester Co. v. Occupational Safety and Health Review Commission,* 628 F.2d 982, 986 n. 4 (7th Cir.1980) (distinguishing *Continental Can* and finding no harassment because OSHA had not repeatedly cited Harvester for conduct that was previously found lawful).

In addition to the foregoing, DOL's action does not rise to the level of vexatiousness because we cannot see, nor do appellants show us, how they will be harmed by litigating in the administrative forum. Appellants give no indication that the administrative action would impose intolerable litigation costs. *Cf. United States v. Ameri-*

*can Honda Motor Co.,* 273 F.Supp. 810, 819 (N.D.Ill.1967) (finding repetitious litigation vexatious because it involved subpoenas calling for more than 6,000 pages of documents from all over the country).

Appellants have failed to show that the DOL debarment proceeding will amount to a clear and unambiguous violation of their statutory or constitutional rights. We find no evidence that the administrative litigation would be any more costly than the litigation before us; in fact, we think it more likely that the administrative litigation could have been more efficient and economical than appellants' pursuit of an injunction. Indeed, even if the administrative tribunal rejects the preclusion defense, it still might feel no need to impose any additional penalties on the appellant. In sum, this case does not fall within the exception to the exhaustion doctrine carved out by *Continental Can* and *Babcock* because, even if appellants have a valid claim preclusion defense, DOL's action does not amount to vexatious prosecution.

## IV.

■ The short of it is that, rather than seeking to enjoin the DOL debarment through collateral judicial action, appellants must first try to litigate their case before an administrative officer. By seeking to enjoin the administrative proceedings, appellants have closed off an efficient administrative forum in which to resolve a number of issues. Absent any indication of a due process violation or vexatious prosecution, we find no reason to frustrate the policies underlying the doctrine of exhaustion by circumventing the doctrine. We will therefore affirm the judgment of the district court insofar as it denied injunctive relief. However, because the opinion of the district court adjudicates the merits of the preclusion issue, we will vacate it so that the agency may resume its own proceedings and address the issue.

ROSENN, Circuit Judge, dissenting.

The majority concludes that "[a]bsent any indication of due process violation or

5. In *Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128, 1138 (3d Cir.1979) (citing *Continental Can,* 603 F.2d at 596), this court recognized in dicta that exhaustion can be waived when, *inter alia,*

an agency's vexatious and harassing refusal to follow issue preclusion, as in *Continental Can,* constitutes a clear and unambiguous violation of constitutional rights.

vexatious prosecution," Maj. op. at 1169, it finds no reason to frustrate the policies underlying the doctrine of exhaustion by enjoining the Department of Labor (DOL) debarment proceedings. I believe that the exceptions to the doctrine requiring exhaustion of administrative remedies are not nearly as limited as the majority paints them, but have a much broader and more flexible range. Absent a statutory mandate for exhaustion of administrative remedies, there is no judicial justification to relegate a party to administrative procedures when the issue involved is only a legal one, requiring neither the agency's expertise nor any factual determinations. Because that is precisely the situation in this case, I respectfully dissent.

## I.

The basic premises underlying the exhaustion of administrative remedies doctrine are that (1) judicial review may be facilitated by permitting the appropriate agency to proceed without interruption to develop a factual record and apply its expertise with respect to technical subject matter; (2) administrative autonomy requires that an agency be afforded an opportunity to proceed without interference from the courts when the decision involves the exercise of discretionary powers granted by the Congress or the agency's expertise; and (3) judicial resources may be conserved should the agency grant the relief sought. *McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969).

However, the doctrine, like most judicial doctrines, is subject to numerous exceptions. *McKart,* 395 U.S. at 193, 89 S.Ct. at 1662. As the majority correctly observes, the exhaustion doctrine is not absolute and "exists within a court's discretion rather than as a strict rule of law." Maj. op. at 1167. Therefore, the court should balance the goals of the doctrine against the interests of the parties:

Except in those cases where exhaustion of administrative remedies is specifically

required by statute, ... administrative remedies need not be pursued if the litigant's interests in immediate review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.

*West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980). The exceptional circumstances presented by this case demand exercise of the court's discretion.

The only issue here is whether the HUD debarment had a preclusive effect on the later DOL debarment proceeding.[1] This is merely a legal question involving two government agencies, the resolution of which requires no administrative findings or expertise on the part of the DOL. The facts have been stipulated and are neither technical nor complex. Nor does resolution of the legal issue depend on the interpretation or application of the agency's own regulations. "It is well established that the courts need not defer to any agency where the issue involved is a strictly legal one, involving neither the agency's particular expertise nor its fact finding processes." *Board of Educ. v. Harris,* 622 F.2d 599, 607 (2d Cir.1979), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981). *Accord Borden, Inc. v. FTC,* 495 F.2d 785, 787 (7th Cir.1974); *Consumers Union of United States v. Cost of Living Council,* 491 F.2d 1396, 1399 (T.E.C.A.), *cert. denied,* 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761 (1974). Because the failure of the appellants to submit their preclusion claim to the administrative processes of the agency only deprives the DOL of the opportunity to decide a pure legal issue, and does not deprive it of the opportunity to speak on matters within its realm of expertise, this case should be treated as an exception to the doctrine of exhaustion.

Moreover, resort to administrative remedies will probably only delay judicial resolution of this same issue, thereby frustrating the equally valid goals of judicial economy and expediency as well as imposing unnecessary additional expense and time on the

---

1. I agree with the majority that "the HUD debarment was sufficiently adjudicatory and final to enable appellants to raise a preclusion defense in the later DOL debarment.... Moreover, the HUD ALJ filed a detailed opinion containing his factual findings and rulings." Maj. op. at 1167.

parties. The United States District Court has already ruled on the issue and it has been briefed and orally argued on appeal. Although the DOL has the power to sustain appellants' preclusion claim, it is very unlikely that further proceedings before it would produce such a result. Inasmuch as the successful prosecution of the appellants by HUD for the underlying charges and HUD's debarment proceeding were predicated upon the DOL's own investigation, it is unlikely, in the very nature of human behavior, that the DOL will be wholly objective and impartial. When the agency has already evinced its special competence in a manner hostile to the appellants, "courts need not bow to the primary jurisdiction of the administrative body." *Board of Educ. v. Harris*, 622 F.2d at 607.

Finally, in view of the history of the previous proceedings, I believe that compelling the appellants to respond to yet another administrative proceeding, before allowing judicial determination of the legal issue, serves no purpose and is unduly harsh. The Court has recognized that, under certain circumstances, application of the exhaustion doctrine may be unacceptably harsh. In *McKart*, the petitioner had been convicted for failure to submit to induction into the Armed Forces of the United States. The district court held that the petitioner was barred from raising the defense of military exemption because he had failed to exhaust the administrative remedies provided by the Selective Service System. In holding that the failure to exhaust his administrative remedies did not bar McKart from challenging the validity of his classification as a defense to the criminal prosecution, the Court observed that "use of the exhaustion doctrine in criminal cases can be exceedingly harsh." *McKart*, 395 U.S. at 197, 89 S.Ct. at 1664.

In the circumstances of this case, although civil, compelling appellants to submit to an additional agency proceeding only for a decision on a legal issue would also be harsh. The DOL completed its final investigation in 1984 but failed to initiate any debarment proceedings. Following their conviction on the basis of the DOL investigation, the individual defendants were sentenced to prison, fined, and ordered to make restitution. Appellants made restitution in the sum of $126,000 to their employees. They were then subjected to administrative proceedings by HUD and debarred. Less than three months before the HUD ALJ entered his debarment order, DOL at last decided to commence its own debarment proceeding. It now seeks to deprive appellants of a judicial inquiry. As in *McKart*, we too must ask then, "whether there is in this case a governmental interest compelling enough to outweigh the severe burden placed on [appellants]." *Id.* at 197, 89 S.Ct. at 1664–1665. I see none.

Accordingly, I would decide the legal issue of claim preclusion raised on this appeal and not require exhaustion of remedies before the DOL. I therefore dissent.